No. 38,204

W. G. TALBOTT, *Appellee*, v. JOHN P. GATY, OLIVE ANN BEECH and THEODORE A. WELLS, *Appellants*.

(231 P. 2d 202)

Opinion filed May 12, 1951.

*Daniel M. Moyer,* of Wichita, argued the cause, and *Dwight S. Wallace* and *Daniel C. Bachmann,* both of Wichita, were with him on the briefs for the appellants.

*Howard T. Fleeson,* of Wichita, argued the cause, and *Paul H. White, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky,* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for the alleged breach of an oral contract of employment. The appeal is from an order of the trial court overruling defendants' demurrer to plaintiff's amended petition.

The original petition was filed December 29, 1949. To this defendants filed three motions. *First,* to require plaintiff to separately state and number causes of action; *second,* a motion to strike various portions of the petition; *third,* a motion to make definite and certain in many particulars. These motions were heard by the court and ruled upon February 20, 1950, at which time the court denied the motion to separately state and number causes of action and sustained each of the other two motions in part and overruled them

in part. Thereafter plaintiff filed his amended petition, which will be summarized or quoted from as follows: This gave plaintiff's address and alleged that he is a petroleum geologist, in which work he has been engaged in Kansas more than twenty-five years, and that he had engaged to a considerable extent in the operation and production of oil and gas; that from April 11, 1944, to January 1, 1947, plaintiff was retained and employed by Beech Aircraft Corporation as consulting geologist in a program of exploration and development conducted by that company to procure natural gas in the vicinity of its plant near Wichita; that the contract for such employment was evidenced by a letter, a copy of which was attached as an exhibit; that the defendants at all times mentioned have been and are officers of the Beech Aircraft Corporation and thoroughly familiar with his qualifications as petroleum geologist and producer, with his services with the Beech Aircraft Corporation and with the fact that plaintiff had compiled and was maintaining a set of plotted logs of all wells for the production of oil and gas drilled in Kansas between Range 7 East, 6 P. M. and the Colorado line; that in making the oral agreement later mentioned the defendant Gaty was the duly authorized agent of the other defendants and acted for them as well as for himself; that in the month of May, 1945, the defendant Gaty orally stated to plaintiff that he and the other defendants had decided to engage in their individual capacity in a program of exploration and development for the production of oil and that they desired the benefits of plaintiff's services and would include him as a partner in the venture; or, if plaintiff preferred, they would retain and employ him as consulting geologist on terms similar to those of the plaintiff's contract with the Beech Aircraft Corporation; that plaintiff expressed his preference to associate himself in the venture as a consulting geologist rather than a partner, and it was orally agreed between plaintiff and defendants:

"(a) That the plaintiff, using his knowledge, skill and experience as a petroleum geologist, and his office facilities and employees, would proceed at once and continue, under the general direction of the defendants, to make geological surveys of areas in the state of Kansas, particularly and in the beginning in Sedgwick and Butler counties, to be mutually agreed upon, for the purpose of determining the possibilities of such areas for the production of oil therefrom; would make maps and charts showing the results of such surveys for the use of the defendants, and from time to time revise such maps and charts to reflect the information obtained from drilling operations in the respective areas; would make recommendations to the defendants as to favorable drilling locations based on geological information acquired by the plaintiff in his sur-

veys and studies of such areas, including his information previously acquired; and that so long as the defendants should continue their oil exploration and development program the plaintiff would not furnish to others any geological information as to the designated areas.

"(b) That the plaintiff would endeavor to procure leases for the defendants on lands recommended by him as favorable for oil production and approved for leasing by the defendants, and in connection with such leasing activity would investigate the title to such lands and have the titles cleared of encumbrances, former leases, and other involvements which might obstruct oil development of the lands or hinder or delay the marketing of oil and gas production under leases so obtained.

"(c) That the plaintiff would negotiate contracts with reliable and capable contractors for the drilling of wells for the defendants and would supervise the drilling and testing and equipping of their wells, observing formations encountered in drilling and advising the defendants and directing the drilling contractors according to the geological data acquired and from his knowledge and experience as a geologist.

"(d) That the plaintiff would keep the files of the defendants on their leases and oil operations, and until such time as the volume of their oil production should warrant the employment of a full-time production superintendent, would purchase their equipment for them, would negotiate for and acquire necessary rights of way for ingress and egress and for pipe lines, and that he would act as a public relations man and would investigate and settle claims for damages incident to the defendants' oil operations.

"(e) That the defendants would pay to the plaintiff 50¢ an acre for all lands approved by defendants for leasing on plaintiff's recommendations and on which oil and gas mining leases for the defendants should be obtained.

"(f) That in consideration of the plaintiff's services as consulting geologist and drilling and production supervisor the defendants would pay to the plaintiff fees equal to 6 per cent of all costs of drilling and testing each well which should be drilled by or for the defendants on acreage leased by the defendants in reliance on the plaintiff's geological surveys and recommendations.

"(g) That the contractual relations so created should continue until there should be complete development of such leaseholds as might thereafter be acquired by the defendants in reliance on the plaintiff's geological surveys and recommendations and which should prove productive. The plaintiff is unable to describe any leaseholds which the defendants may then have contemplated acquiring, because no specific leasehold was mentioned."

That pursuant to the agreement plaintiff promptly proceeded to and did, as expeditiously as possible, make geological surveys of the areas designated by defendants, which finally covered the greater part of sixteen townships in eastern Sedgwick and western Butler counties, and made and furnished defendants numerous maps and charts of the sub-surface geology of those areas; that at the direction of defendants he acquired oil and gas mining leases for

them, negotiated building contracts, purchased equipment and materials, acquired rights of way, settled damage claims, supervised drilling operations and performed all other of his duties under the oral agreement until about the 16th day of June, 1949, when defendants attempted to cancel the agreement. The acts by which defendants attempted to cancel the agreement were set out with exhibits. It was alleged that the action of defendants in attempting to cancel the agreement was not induced by any fault on the part of plaintiff and was without cause and wrongful, prevented further performance by plaintiff, and constituted a breach of their agreement. It was further alleged that acting upon plaintiff's recommendations and the geological information furnished them by plaintiff they had taken leases on approximately 17,000 acres of land in Sedgwick and Butler counties, for 14,000 acres of which he had been paid, but that defendants had refused to pay him the fifty cents per acre agreed upon for the other 3,000 acres, for which they were indebted to him in the sum of $1500. It was further alleged that the geological information furnished by plaintiff to defendants has resulted in the obtaining by defendants of oil production amounting to approximately 750 barrels per day from certain pools, which were named, and has further resulted in establishing the probable oil productivity of extensive acreage held by defendants and not yet developed; that defendants have conducted their oil operations for the most part in a manner calculated to define the limits of the pools in which they operate; that instead of drilling on each location as it has appeared they have proved productive they have moved to more distant locations on or near the edge of favorable geological structures, and by so doing have rapidly exploited the plaintiff's knowledge and services and geological information furnished them by plaintiff in such manner that defendants have established good productivity of approximately 87 oil wells located on acreage leased by them on information supplied to them by the plaintiff, on which defendants will be required to drill to comply with the covenants for development implied in those leases. It was further alleged that as to all the lands in Sedgwick and Butler counties on which defendants hold oil and gas mining leases the plaintiff has furnished to the defendants exclusively all the geological information which he possessed at the time of the making of the oil agreement and which he has subsequently acquired, and that in their further development of those lands defendants will have the

benefit and will necessarily make use of all such information; that by the terms of the oral agreement the plaintiff was to be compensated for such information by the fees he was to receive of six per cent of the drilling costs of the wells; that plaintiff is and has been at all times willing and able to perform his duties under the agreement of supervising, locating, drilling, testing and equipping of defendants' wells, but that by the action of defendants he had been prevented from doing so, to his damage in a stated amount, for which he asked judgment in addition to the $1500 alleged to be owing him for acquiring leases.

To this amended petition defendants filed a demurrer upon the ground that the amended petition does not state facts sufficient to constitute a cause of action against defendants. This demurrer was considered by the court and overruled on June 27, 1950, and within due time the defendants filed their notice of appeal from the order and judgment of the district court on June 27th overruling the demurrer and from all prior orders, judgments and rulings made adverse to defendants.

In this court counsel for appellants complain of the rulings of the trial court made May 18, 1950, with respect to each of their motions. These points are not well taken for the reason that the orders made by the court overruling those motions were not separable appealable orders. This case never has been tried, hence no final judgment has ever been rendered against appellants, and our statute (G. S. 1949, 60-3314a) has no application. The result is we can pay no attention to appellants' arguments respecting those specifications of error.

The only appeal here is from the order of the court on June 27, 1950, overruling the demurrer filed by the defendants to the amended petition of plaintiff. This demurrer was predicated upon the ground that the petition did not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendants. We have examined the petition closely and reach the same conclusion the trial court did. Appellants point out a few phrases which might have been inserted or omitted from the petition, but we think none of them is material and that the petition will apprize defendants of plaintiff's claim and his reasons therefor.

Counsel for appellants assert that the petition alleges no duty upon defendants to drill any additional wells. We find quite a

definite allegation as to defendants' duty in that regard in paragraph 6 (g), where it was alleged:

"That the contractual relations so created should continue until there should be complete development of such leaseholds as might thereafter be acquired by the defendants in reliance on the plaintiff's geological surveys and recommendations and which should prove productive. . . ."

Appellants talk about implied covenants in leases and what the lessor must do to enforce them. The cases cited by appellants are beside the point. Plaintiff is not suing on an implied covenant to fully develop the property. He is complaining of the violation by defendants of a specific agreement which they made with him to fully develop the properties on which oil is found and where the leases have been acquired upon the recommendation of plaintiff.

Counsel for appellants contend that the contract as pleaded by plaintiff is unenforceable under our statute of frauds. (G. S. 1949, 33-106, sub-div. 4.) The point is not tenable. It is well settled that a contract of hiring which fixes no definite time for its termination is not within the statute. (See 27 C. J. 187; 49 Am. Jur. 409, § 51; and see our own decisions, *Richard v. Kilborn,* 150 Kan. 579, 584, 95 P. 2d 545; *Kinser v. Bennett,* 163 Kan. 725, 729, 186 P. 2d 284, and authorities there cited.)

We find no error in the record. The judgment of the court below is affirmed.