No. 46,343

EARL THOMPSON, *Appellant,* v. B.· R. ANDERSON, D. MONROE COBB, WALTER N. MURPHY, JOHN F. REECE, GLENN G. TAYLOR, and D. W. STRUBE, *Appellees.*

(498 P. 2d 1)

Opinion filed June 10, 1972.

*Wendell S. Holmes,* of Hutchinson, argued the cause, and was on the brief for the appellant.

*H. Newlin Reynolds,* of Hodge, Reynolds, Smith, Peirce and Forker, of Hutchinson, argued the cause, and *Frank S. Hodge, Dennis O. Smith, Kenneth E. Peirce* and *Dan W. Forker, Jr.,* of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a stockholder of a Kansas telephone association to recover damages from six other stockholders for the alleged breach of a first-option stock purchase agreement. The trial court sustained a motion for summary judgment filed by the appellees which was based upon certain admissions and answers to interrogatories made by appellant and the sworn testimony of the appellant in a collateral action involving the same subject matter. The issue presented to this court is whether or not the trial court erred in granting summary judgment to the appellees.

The factual situation which brought about this litigation is not greatly in dispute and is essentially as follows: The appellant, Earl Thompson and the appellees, B. R. Anderson, D. Monroe

Cobb, Walter N. Murphy, John F. Reece, Glenn G. Taylor and D. W. Strube, were the principal stockholders of the Reno Telephone Association, Inc. which operated a local telephone system in the general area of Hutchinson, Kansas. On February 15, 1961, the articles of incorporation of Reno Telephone were amended to provide as follows:

"No stockholder shall sell his stock or any part thereof to any person not already a stockholder in the corporation unless the proposed seller shall first give to the corporation or other stockholders of the corporation an opportunity to purchase same."

The amendment also contained provisions as to the manner in which the purchase price per share should be determined and a procedure for giving notice of a stockholder's intention to sell. An identical provision was placed in the bylaws of the corporation. There is nothing in the record to indicate that this first-option provision was brought into play prior to 1966. In the fall of 1966 a number of larger telephone companies became interested in purchasing the telephone system of Reno. The stockholders were obviously concerned that some of them might sell their stocks to outside interests thereby interrupting the continuity of management with detrimental results to the interests of the stockholders and the community. On December 10, 1966, the appellant and the six appellees entered into a stock agreement which provided in substance that in the event any of the parties to the agreement desired to sell his stock and received a bona fide offer for the sale of his stock, he would be obligated to first offer the same to the other parties for the same price and upon the same terms as contained in the bona fide offer received. Since this stock agreement is the contract upon which appellant's cause of action is based it would be helpful to set it out in full:

### "STOCK AGREEMENT

THIS AGREEMENT made and entered into this 10th day of December, 1966, by and between the parties signatory hereto, each of whom is the owner of shares of Reno Telephone Association, Inc., located in Hutchinson, Kansas.

"WITNESSETH:

"WHEREAS, the parties signatory hereto, own a substantial portion of the shares of Reno Telephone Association, Inc., and they believe it to be for the best interests of the Corporation and for themselves as stockholders, and for all of the stockholders in the community in which the said Corporation is located, that some effort be made to preserve and perpetuate the continuity of management and to preclude the possibility that outside interests might acquire a substantial amount of stock of said Corporation and thereby ac-

quire control of the Corporation through the acquisition of stock, all of which might be detrimental and harmful to the best interest of the Corporation and the stockholders and the community, the undersigned stockholders, in consideration of the mutual covenants and agreements hereinafter set forth, do hereby mutually promise and agree, each for himself and each for the others who are parties hereto, as follows:

"1. The parties first agree that each of them own stock in the Corporation as follows:

| | |
|---|---|
| "B. R. Anderson | 99 shares of stock |
| "D. Monroe Cobb | 135 shares of stock |
| "Walter N. Murphy | 106 shares of stock |
| "John F. Reece | 76 shares of stock |
| "Glenn G. Taylor | 108 shares of stock |
| "Earl Thompson | 137 shares of stock |
| "D. W. Strube | 56 shares of stock |

"2. In the event any of the parties signatory hereto, desires to sell or otherwise dispose of his stock in the Reno Telephone Association, Inc., or any part thereof, and shall have received a bona fide offer for the purchase of said stock, he shall first offer the same for sale to the other parties signatory hereto, on a proportionate basis among the other parties, at the same price and upon the same terms for which said bona fide offer has been received. This option so granted to the others shall expire at the end of 90 days written notice from such stockholder to the other parties hereto. If at the end of said 90 day option period, a party signifies in writing to such offering stockholder, that they do not wish to purchase any of said stock upon such basis, then the remaining stockholders who do desire to purchase said stock have a further option of 15 days from the end of the initial 90 day period to take among themselves on an agreed proportionate basis such stock that is not taken in the initial 90 day period. That at the end of the initial 90 day period and the additional period of 15 days, after it is determined the amount that each of the other parties hereto wish to take of the stock of the offering stockholder, then the purchase and sale thereof shall be promptly completed, with the selling stockholder transferring such shares among the other parties hereto in accordance with this agreement and payment being made forthwith.

"3. As to any stock not so purchased in accordance with this agreement and which still remains under the ownership of the offering stockholder after the end of the 105 day period as above outlined, then such stockholder may sell such stock upon the same terms to anyone else that he may wish, all subject, of course, to the restrictions of the Articles of Incorporation and any Amendments thereto of the Corporation and Bylaws thereto, except such sale to any outsider, shall not be on any more favorable terms than is being made by such offering stockholder to the parties hereto.

"4. There is one exception to the foregoing in that any of the parties signatory hereto, may sell or dispose of the stock owned by him to any other parties signatory hereto upon any terms and conditions and for any price which may be agreed upon between the party desiring to sell and the party offering to buy.

"5. The option granted herein and restriction upon the sale of the stock of the parties hereto, shall apply equally to transfer of stock by gift, bankruptcy, receivership, foreclosure of lien, or in any manner except bequest or inheritance. This agreement shall survive the death of any of the parties signatory hereto, and the heirs, legatees, and personal representatives, or successor in interest of any Corporate or Fiduciary stockholder of such deceased stockholder shall be bound by all of the terms, conditions, and restrictions of this agreement as herein set out.

"6. The parties hereto further agree that a copy of this agreement shall be served upon and deposited with the President, the Secretary, and the Transfer Agent, if any, of Reno Telephone Association, Inc., as located at Hutchinson, Kansas.

"IN WITNESS WHEREOF, the parties have hereunto set their hands this 10th day of December, 1966.

| | | | |
|---|---|---|---|
| "/s/ | B. R. Anderson | /s/ | D. Monroe Cobb |
| | B. R. Anderson | | D. Monroe Cobb |
| "/s/ | Walter N. Murphy | /s/ | John F. Reece |
| | Walter N. Murphy | | John F. Reece |
| "/s/ | Glenn G. Taylor | /s/ | Earl Thompson |
| | Glenn G. Taylor | | Earl Thompson |
| "/s/ | D. W. Strube | | |
| | D. W. Strube" | | |

We will refer to this agreement as the "first-option agreement." The two principal companies which were interested in the purchase of Reno Telephone were Continental Telephone Corporation which will be referred to as "Continental" and Trans-Continental Telephone and Electronics, Inc. which will be referred to as "Trans-Continental." During the period from approximately March 1 to April 20, 1967, several offers for the purchase of Reno Telephone stock were made by both Continental and Trans-Continental in an effort to secure control of Reno Telephone. The appellant Thompson supported the efforts of Trans-Continental to purchase the outstanding stock of Reno Telephone. The testimony of appellant discloses that during the period from March 1 to March 10, 1967, he personally assisted the agents of Trans-Continental in buying shares of stock from ten other stockholders contrary to the first-option provisions of the articles of incorporation and bylaws of Reno Telephone mentioned heretofore. The appellees were not certain as to what they should do. On about April 13, 1967, the agents of Continental came forward with an offer to purchase the stock of Reno Telephone at a purchase price of $585 per share. It is not clear from the record whether the offer of Continental at this price was a firm offer without conditions or restrictions or whether the offer was

conditional upon the signing of written option agreements to be signed by each stockholder. The appellees who were members of the board of directors of Reno Telephone decided to have a meeting to decide what should be done. This meeting was to have taken place on April 14, 1967. When Thompson heard about the proposed meeting of appellees he and Trans-Continental filed an action on April 13, 1967, in the district court of Reno County for an injunction to enjoin the meeting. On the day the action was filed the district court issued a restraining order enjoining the appellees from holding the meeting. The injunction suit apparently had the effect of crystallizing the thinking of appellees and they decided to accept the proposition made by Continental. Between April 14 and April 17, 1967, each one of the appellees signed an option agreement with Continental for the purchase of his stock at a price of $585 per share. Six separate option agreements were prepared and signed by each of the appellees and by an agent of Continental. The option agreement executed by Walter N. Murphy is typical of all and is as follows:

"OPTION AGREEMENT

"THIS AGREEMENT made and entered into this 17 day of April, 1967, by and between Continental Telephone Corporation, a Delaware Corporation hereinafter called "Continental," and the undersigned stockholder of the Reno Telephone Association, Inc., a Kansas Corporation hereinafter called "Reno", such stockholder being hereinafter called "Transferor".

"Now THEREFORE, in consideration of the sum of One Dollar and other good and valuable consideration paid by Continental, the receipt and adequacy of which is hereby acknowledged, it is agreed as follows:

"1. OPTION. Transferor hereby grants to Continental the option to purchase the following described shares of Common Stock of Reno, on the terms hereinafter set forth, such Stock being described as follows:

"(a) 106 shares of Class "A", voting Common Stock of Reno.

"(b) 46 shares of Class "B", non-voting Common Stock of Reno.

"2. PURCHASE PRICE. The purchase price payable for such shares of stock, either Class "A" or Class "B", shall be $585 in cash to be paid by Continental to Transferor upon delivery of such shares, *it being understood that delivery and payment therefore is conditioned and subject to the By-Laws and the Articles of Incorporation as is now existing and as may be amended, and any other legal agreement, presently in force.* (Emphasis supplied.)

"3. EXERCISE OF OPTION. This option to purchase shall be exercisable by Continental on or before 120 days from the date hereof, by notice in writing by Registered Mail to Transferor at his or their address which is: Box 946 Hutchinson, Kansas and that the closing of this transaction in case the option is exercised shall be as contained in a letter from Continental to Transferor.

"4. REPRESENTATIONS. Transferor represents that he or they are the sole

owners, either individually or jointly of the above described stock and has the right to sell all of the above described stock to Continental, subject to Paragraph 2.

"In Witness Whereof, this instrument is executed this 17 day of April, 1967.

"Transferor
"/s/ Walter N. Murphy

"Continental Telephone Corporation
"By /s/ Vernon R. Chesbro
"Duly authorized agent of the
    Corporation."

The appellant Thompson in his answers to appellees' interrogatories stated that after Continental made its offer to purchase the stock at $585 per share, he took up the matter with the management of Trans-Continental who gave to appellant a commitment that it would back him financially in the purchase of all of the stock belonging to the appellees at a price of $585 per share with the express understanding that appellant would sell to Trans-Continental all of that stock in addition to his own in exchange for 17,208 shares of Trans-Continental stock. If Thompson could have completed this deal by purchasing all of appellees stock at $585 per share, he could have exchanged such stock to Trans-Continental for shares of its stock with a resulting tidy profit to appellant in the amount of $114,003. The exact date this commitment was obtained from Trans-Continental does not appear but it was sometime around April 17, 1967.

On May 22, 1967, the injunction suit came on for hearing. In that action appellant amended his petition alleging that the option agreements signed by each of the appellees and Continental were null and void and unenforceable. Appellant also attacked the validity of the first-option provisions of the articles of incorporation and by-laws of Reno Telephone. It was at this hearing in the injunction suit that appellant testified about his previous activity in assisting Trans-Continental in the purchase of stock from the ten minority stockholders of Reno Telephone.

At this point the parties were at loggerheads and were involved in what appeared to be interminable litigation. Thereafter the representatives of Continental and Trans-Continental got together on a merger plan by which Trans-Continental would be merged into Continental. As a result of the merger Continental never exercised its options to purchase appellees' shares within the period

of the options. It is clear that appellant never made a demand on appellees to purchase their stock at a price of $585 per share prior to the filing of the instant case.

On July 24, 1967, appellant dismissed his injunction suit against the appellees. On August 12, 1967, all of the stockholders of Reno Telephone, including appellant and all of the appellees, held a stockholders meeting and voted a reorganization plan whereby each stockholder would exchange his Reno stock for shares of Continental stock. Appellant participated in the meeting and voted in favor of the reorganization plan along with the other stockholders. In December 1967 each of the Reno stockholders including the appellant exchanged his Reno stock for the Continental shares pursuant to the plan previously adopted.

Apparently the loss of the contemplated profit of $114,003, which appellant would have made had his deal with Trans-Continental been consummated, began preying on his mind. On February 5, 1968, appellant filed the present action against the appellees seeking damages for breach of the first-option agreement of December 10, 1966. Appellant's petition also included a second cause of action for damages for a conspiracy among the appellees to deprive appellant of his rights under the first-option agreement. On September 2, 1969, the appellees filed a motion for summary judgment. On October 27, 1970, the appellees' motion for summary judgment was sustained and summary judgment was entered in favor of the appellees. The trial court made no findings of fact or conclusions of law and gave no reasons for its decision. The appellant brought a timely appeal to this court.

In their motion for summary judgment appellees contended that there were no remaining genuine issues of fact, that the petition did not state a cause of action against appellees from which relief could be granted, and further that appellant had assumed inconsistent positions in his course of dealings and that by reason thereof appellees were entitled to judgment as a matter of law.

On this appeal the appellant contends that the trial court was in error in sustaining appellees' motion for summary judgment for the following reasons:

(1) On the record, there exists a genuine disputed issue of the following material facts:

(a) Whether or not about April 17, 1967, the appellees, or any of them, desired to sell or otherwise dispose of their stock in Reno Telephone, or any part thereof, and received a bona fide offer for the purchase of said stock.

(*b*) Whether the appellant was ready, willing and able to purchase on or about April 17, 1967, all or any part of the Reno Telephone common stock which was owned by the appellees.

(*c*) Whether appellees, or any two or more of them, conspired together and with each other and with third parties in connection with receiving and considering offers from third parties for the purchase of all or any part of their common stock in Reno Telephone in an unlawful manner to the damage of appellant.

(2) Considering the facts in the record and the issues framed by the pleadings in the light most favorable to the appellant, appellant is entitled to judgment on both causes of action.

(3) At the time judgment was entered, appellant had not had an opportunity to complete his pretrial discovery procedure.

(4) The position assumed by appellant in Reno County District Court Case No. 15847 (the injunction action) does not serve as a bar or as an estoppel to appellant's causes of action in the case at bar.

(5) The pleadings, answers to interrogatories and admissions on file do not show that appellees are entitled to judgment as a matter of law.

The appellees take the position on this appeal that there are no genuine disputed issues of fact since the answers to interrogatories and admissions made by the appellant and the sworn testimony of appellant in the injunction action disclose sufficient facts for a determination of the motion for summary judgment. They further contend that the option agreements signed by each of the appellees did not constitute bona fide offers to purchase the Reno stock since they were subject to the restrictions on sale in the articles of incorporation and bylaws of Reno Telephone and "any other legal agreement, presently in force" and subject to an exercise of the options by Continental. Appellees further contend that the undisputed facts disclose that at no time did the appellees sell their stock to anybody until after the stockholders meeting on August 12, 1967, at which time the appellant himself approved the exchange of stock with Continental. Appellees further argue that the appellant himself breached the December 10, 1966, agreement by assisting Trans-Continental in purchasing stock from other stockholders in violation of the expressed intent of the first-option agreement and further that by reason of the appellant's conduct with respect to the entire transaction he has waived the right to enforce the first-option agreement and therefore is estopped to enforce it against the appellees.

We shall first determine the contention of appellant that summary judgment was granted prematurely on the grounds that there were unresolved disputed issues of fact and since appellant had

not had an opportunity to complete his pretrial discovery procedures. We have held that before summary judgment may be granted under K. S. A. 60-256 (c) the record must show that there remains no genuine issue as to a material fact; that when ruling on a motion for summary judgment, the district court must resolve against the movant when any doubt exists whether there remains a genuine issue of material fact, and that the evidentiary material presented by the party opposing the motion must be taken as true, and such party given the benefit of all reasonable inferences from such evidence. (*Weber v. Southwestern Bell Telephone Co.*, 209 Kan. 273, 497 P. 2d 118.)

The most common problem in cases of summary judgment is in determining whether or not there really is a genuine issue as to any material fact. We have stated that an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. (*Secrist v. Turley*, 196 Kan. 572, 412 P. 2d 976.)

In the case at bar we have no hesitancy in holding that the undisputed facts provided by the appellant by his own admissions and answers to interrogatories and by his testimony under oath in the injunction proceeding established a sufficient undisputed evidentiary record upon which summary judgment was properly granted to the appellees in the case at bar. This is true as to at least one defense raised by the appellees, that defense being waiver or estoppel of the appellant arising by his course of conduct with reference to the transactions out of which this lawsuit arose.

We have recognized the general rule that reasonable restrictions upon a stockholder's right to transfer his corporate stock may be imposed by the articles of incorporation or by the agreement of the stockholders themselves. (*Browning v. LeFevre*, 191 Kan. 397, 381 P. 2d 524.) The purpose of a first-option provision is to prevent or discourage a sale of stock to outsiders so as to preserve the continuity of management. Such provisions, however, are generally regarded with disfavor and are strictly construed. Where a first-option agreement exists, compliance with such agreement may be waived by acquiescence in a transfer of the particular stock, by failure to exercise the option within due time or by prior dealings or a course of conduct on the part of the stockholder

seeking to enforce the agreement directly inconsistent with a position subsequently taken. (18 Am. Jur. 2d, Corporations, § 393.) For a case with a factual situation similar to the case at bar we note *Browning v. LeFevre,* supra. *Browning* was a first-option case involving corporate stock. The appellant Browning disregarded the first-option provision of the articles of incorporation by his attempt to buy stocks for nonstockholders with whom he was working to acquire control of the company. It was held that Browning by his prior dealings and conduct directly inconsistent with his position subsequently taken precluded him from enforcing the first-option provision in a subsequent action against other stockholders based upon a violation of the provision. This court held that the doctrine of equitable estoppel requires consistency of conduct, and a litigant is estopped and precluded from maintaining an attitude with reference to a transaction wholly inconsistent with previous acts and business connection with such transaction.

In *Elliott, et al. v. Lindquist, et al.,* 356 Pa. 385, 52 A. 2d 180, 169 A. L. R. 1869, a group of stockholders sought to impose a constructive trust upon stock transferred to nonstockholders in violation of a first-option provision. The court refused to enforce the provision because the stockholders had disregarded it in the past, stating as follows:

". . . contracting parties cannot ignore their own contractual covenants with impunity and still seek to hold the others to the contract, . . . Parties to a written contract may abandon, modify or change it by words or by conduct: (p. 388.)

.   .   .   .   .   .   .   .   .   .   .   .

"The evidence, . . . supports the learned chancellor's findings and conclusions to the effect that the stockholders who are now complaining had no equity that would support the decree prayed for." (p. 391.)

In *Bank v. Jesch,* 99 Kan. 797, 799, 163 Pac. 150, we stated:

" 'Whether the principle is described as equitable estoppel, *quasi*-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important.' (*Powers v. Scharling,* 76 Kan. 855, 859, 92 Pac. 1099.) 'The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced.' (10 R. C. L. 694.)" (p. 799.)

To the same effect are *Lillard v. Johnson County,* 102 Kan. 822, 825, 172 Pac. 518, and *Antrim v. International Life Ins. Co.,* 128 Kan. 65, 275 Pac. 1084.

When we turn to the undisputed facts in the case at bar we find

the following actions on the part of the appellant which constitute a course of conduct creating a waiver of his right to enforce the first-option agreement and which estop him from relying upon it as against the appellees.

(1) From March 1 to March 10, 1967, the appellant admittedly assisted Trans-Continental in buying shares from ten Reno stockholders in clear violation of the first-option provision of the articles of incorporation and bylaws of Reno Telephone and in violation of the expressed intention of the parties as stated in their agreement of December 10, 1966.

(2) By his own admission the appellant wanted to buy the appellees' Reno stock, not to preserve present management or keep out outside interests, but for the avowed purpose of reselling the stock to Trans-Continental in violation of the intent of the agreement of December 10, 1966.

(3) In the injunction suit filed by the appellant and Trans-Continental against the appellees, the appellant took the position that the first-option provisions of the articles of incorporation and bylaws of Reno Telephone were unenforceable and further he contended that all stockholders had a right to sell their Reno stock without regard to such first-option provisions.

(4) At no time prior to the filing of the case at bar did the appellant make any attempt to invoke the first-option agreement of December 10, 1966, and never made a demand on the appellees for the purchase of their stock thereunder.

(5) On August 12, 1967, at a meeting of Reno stockholders the appellant voted in favor of the reorganization plan whereby all stockholders were to exchange their Reno stock for Continental stock. Appellant at no time objected in any way to this proposed action although it involved the identical stock which is the subject of litigation in the instant case.

(6) On December 28, 1967, the appellant actually exchanged all of his Reno stock for Continental stock with knowledge that appellees were doing the same and he at no time protested such action. In permitting appellees' stocks to be transferred to Continental without objecting, appellant necessarily waived any preferential rights which he may have had to purchase it under the stock agreement of December 10, 1966. (*Bartlett v. Fourton,* 115 La. 26, 38 So. 882.)

Under these undisputed facts the appellant cannot now change

his position and attempt to enforce the first-option agreement. The appellant by his conduct has waived any rights he may have had under the first-option agreement and he is estopped to assert it against the appellees. Our conclusion therefore is that the action of the trial court in granting summary judgment against the appellant is fully supported by the record on the basis of waiver or estoppel. This renders it unnecessary to decide the other questions raised by the appellant.

For the reasons set forth above the judgment of the trial court granting summary judgment in favor of the appellees is affirmed.

FONTRON, J., not participating.