No. 48,115

GERALD MILDFELT, *Appellant,* v. VIRGIL LAIR, *Appellee.*

(561 P. 2d 805)

Opinion filed March 5, 1977.

*Monte K. Heasty,* of Quinlan, Scovel, Emert & Heasty, of Independence, argued the cause and was on the brief for the appellant.

*Charles F. Forsyth,* of Fleming & Forsyth, of Erie, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Plaintiff, Gerald Mildfelt, commenced this action against Virgil Lair for damages for breach of contract, and later added an alternative claim based upon fraud and deceit. The trial court sustained defendant's motions for summary judgment against all of plaintiff's claims. The defendant's counterclaim for an accounting was tried to the court and judgment was entered against the plaintiff for $2,425.55, plus interest and costs. The plaintiff appeals from all adverse rulings.

The issues before us are whether the trial court erred (1) in granting summary judgment on plaintiff's claims of breach of contract and tort, (2) in its ruling upon the partnership accounting, and (3) in allowing defendant's counsel to participate in the case.

As we turn to the factual background of this dispute, we should be mindful of the rules relating to the granting and appellate review of summary judgments. K. S. A. 60-256 (c) provides for the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

Summary judgment should not be entered where there are disputed issues of material fact. *Motors Insurance Corporation v. Richardson*, 220 Kan. 288, 552 P. 2d 894; *First Land Brokerage Corporation v. Northern*, 220 Kan. 48, 551 P. 2d 866.

Where the sole question presented is one of law, a final determination may be had on a motion for summary judgment. *Wagner v. Mahaffey*, 195 Kan. 586, 408 P. 2d 602. A motion for summary judgment should be sustained only where there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. *Harold v. Harold*, 218 Kan. 284, 543 P. 2d 1019.

In considering a motion for summary judgment, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. *Voth v. Chrysler Motor Corporation*, 218 Kan. 644, 545 P. 2d 371; *Lorson v. Falcon Coach, Inc.*, 214 Kan. 670, 679, 522 P. 2d 449. Factual inferences tending to show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of issues of fact, a motion for summary judgment will not lie. *Mechtley v. Price*, 217 Kan. 344, 347, 536 P. 2d 1385; *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F. 2d 33 (10th Cir. 1975); and *Stevens v. Barnard*, 512 F. 2d 876 (10th Cir. 1975).

An appellate court should read the record in the light most favorable to the party who defended against the motion for summary judgment. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. *Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 553 P. 2d 900; and see 10 Wright & Miller, Federal Practice and Procedure: Civil, § 2716.

Gerald Mildfelt was employed by the Security National Bank in Kansas City, Kansas, at the time that Virgil Lair, of Piqua, Kansas, bought the bank at Stark, Kansas, in 1970. The Stark bank was a customer and correspondent of Security National, and through

this contact the parties became acquainted. They learned that the Home State Bank at Erie, Kansas, might be for sale. Lair negotiated with the Millers, who owned the controlling interest in the Home State Bank, around May 1, 1972. He then contacted Mildfelt and asked if he would come down and serve as president and chief executive officer of the Home State. The parties entered into an oral agreement that if Lair would go ahead and purchase the Home State, Mildfelt would resign his position with Security National, move to Erie, and run the bank. Mildfelt was to be president of the bank at a salary of $14,000 per year. The parties agreed that the bank would furnish Mildfelt with a new car and pay all car expenses. Mildfelt and Lair were to form an equal partnership to sell credit life insurance in connection with loans made by the bank. And in addition, Mildfelt was to have an option to purchase, at a fixed price, up to fifty per cent of the stock in the Home State Bank held by Lair. Thereafter, on May 11, 1972, Lair purchased controlling interest in the Home State from the Millers. Mildfelt resigned his position with Security National, moved his family from Kansas City to Erie, and assumed the management of the Home State Bank on July 1, 1972.

Some months thereafter Mildfelt suggested to Lair that their agreement should be in writing. Mildfelt drew up a proposed agreement and showed it to Lair, who suggested that it should be prepared by an attorney. In about December, 1972, Mildfelt handed the draft he had prepared to Clark Fleming, the bank's attorney, and asked him to formalize it. Mr. Fleming asked Mildfelt a few questions as to provisions which were not clear to him, and made some notes on the original draft. Fleming then took these to his office, redrafted the agreement in formal terms, and returned the documents to Mildfelt. Lair refused to sign the written agreement, and thereafter relations between the parties deteriorated. Lair took over the hiring and firing and discipline of bank employees. Toward the end of March, 1973, Mildfelt told Lair that he was dissatisfied with their agreement and Mildfelt offered to purchase *all* of Lair's interest in the bank. The parties, however, failed to agree upon terms and no agreement was reached. On May 19, at a special meeting of the board of directors of the Home State Bank called by Lair, Mildfelt was relieved of his duties as president of the bank as of Monday morning, May 21, 1973. Mildfelt was instructed to turn over the keys to the bank, return the bank's car, and remove his personal belongings from the president's office.

During the time that he served as president of the Home State Bank, Mildfelt was paid a salary of $14,000 per year, plus a bonus of one-month's salary at the end of 1972 and an additional month's salary as severance pay at the time of his dismissal. He was furnished with a new car during his tenure, and the bank paid the car expense. Mildfelt and Lair were equal partners in an insurance agency which operated from the bank during the same period of time. In 1972, Mildfelt's profit from this venture was about $4900. By May 21, 1973, Mildfelt had withdrawn $2900 more than Lair from the insurance partnership. Lair settled up the partnership insurance business after Mildfelt left the bank.

Mildfelt commenced this action by filing a petition alleging breach of contract, the terms of which were that Lair was to buy the Home State Bank; plaintiff was to quit his job in Kansas City, move to Erie, assume presidency of the bank, have an option to buy fifty per cent of the bank's stock, and be furnished an automobile; and the parties were to start an insurance agency in which each would own fifty per cent. In reliance upon the agreement, and after Lair purchased the bank, Mildfelt performed his part of the contract until May, 1973, when the defendant breached the agreement and fired the plaintiff. Plaintiff sought damages for the breach.

Lair answered, admitting that he and his wife purchased the bank, but denying that there was any written contract between the parties, and denying the breach of any contract. He alleged that plaintiff was employed by the Home State Bank and was discharged for cause. By counterclaim, Lair sought an accounting of the insurance partnership, and judgment for $4,786.94

Plaintiff next moved to require Fleming and Forsyth to withdraw as attorneys for the defendant and, after hearing, the court denied the motion. We will treat this matter later in this opinion.

Mildfelt replied to the counterclaim, denying liability but seeking an accounting. After interrogatories had been answered and depositions taken, Lair moved for summary judgment on the ground that "there is no writing sufficient to indicate a contract of sale between the parties and signed by the defendant or any one authorized by him under K. S. A. 84-2-202 . . . and that summary judgment should be entered for defendant on plaintiff's petition as a matter of law." Plaintiff filed an affidavit in opposition to the motion. The court ruled that the action on contract could not be maintained because the contract was barred by the U. C. C., the applicable section being K. S. A. 84-1-206.

Mildfelt then filed an amended petition, reaffirming and realleging his original claim for breach of contract, and alleging in the alternative that Lair fraudulently and deceitfully entered into the contract, well knowing that he never intended to keep his agreement; that in reliance upon Lair's false promises, Mildfelt left his former employment and performed services valuable to Lair; and that as a direct result of the defendant's false promises, plaintiff sustained damages. Lair answered, denying the contract, breach, and damages, and alleging that the plaintiff's claims were unenforceable under the statute of frauds. Lair counterclaimed for an accounting, but alleged that the amount due had been determined to be $2,425.55. Thereafter, Lair again moved for summary judgment, alleging that plaintiff's claims could not be sustained in either contract or tort, and that Lair was entitled to judgment as a matter of law.

The trial court sustained the motion, saying in part:

"In 104 A. L. R., at page 1422, the text writer reporting Dung v. Parker, 52 N. Y. 494, states what I believe to be the sound interpretation of a statute of frauds. He says:

" ' . . . the court said that a contract void by the statute is void for all purposes, and cannot be enforced directly or indirectly; that whatever the form of the action may be, if proof of the contract, void by the statute, is essential to maintain it, there can be no recovery . . . [T]he intent with which a defendant enters into a contract, void by the statute, which he subsequently refuses to perform, is not material, in determining his liability upon it . . .'

"The gist of plaintiff's complaint is that defendant entered into a contract and then refused to perform. If my reasoning is correct, it is immaterial whether or not he intended to perform . . . . There is no escape from the reality that if the case were tried plaintiff would have to prove the contract which the statute [K. S. A. 84-1-206] says is unenforceable and that to enable plaintiff to prevail it would have to be determined that an agreement is good which the statute says is not good.

"I feel compelled to decide that plaintiff is barred from prosecuting this action in either contract or tort."

Thereafter, trial was held on the accounting, and judgment was entered for Lair and against Mildfelt for $2,425.55. Plaintiff appeals from all adverse rulings.

We will first consider plaintiff's contention that his claim for breach of contract should not be barred by the statute of frauds because of plaintiff's performance of the contract. The agreement, as we view it, had three facets: it provided for employment,

for the formation of an insurance agency partnership, and for an option to buy bank stock.

Plaintiff makes no claim that the employment was to extend for a fixed period; the duration of the employment was not fixed, either during the oral negotiations or in the written—but unsigned—contract prepared at plaintiff's direction. The employment portion of the contract, therefore, could be performed within one year and does not fall within the ambit of K. S. A. 33-106. *Talbott v. Gaty*, 171 Kan. 136, 141, 231 P. 2d 202; and see 72 Am. Jur. 2d, Statute of Frauds § 34, pp. 594-595, and 37 C. J. S., Frauds, Statute of, § 62 (c), pp. 570-571.

However, as we said in *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 546, 545 P. 2d 312:

". . . [T]his court has adhered to the rule prevailing in most jurisdictions (62 A. L. R. 3d, Anno. Employment Contract Termination At Will, p. 271) that in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party. . . ."

One whose employment is terminable at will, however, has no enforceable claim for breach of contract against the employer who discharges him. In the recent case of *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P. 2d 779, we said:

"In the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged." (Syl. 1.)

Mildfelt was, of course, entitled to all compensation earned during his employment. That this has been paid is not disputed.

The duration of the insurance agency partnership likewise was not fixed by the agreement between the parties. In the absence of contract provisions specifying a definite term, a partnership may be dissolved at any time at the will of any of the partners, so long as dissolution does not violate the partnership agreement. Our uniform partnership act, which became effective on July 1, 1972, the date upon which Mildfelt and Lair commenced their insurance agency partnership, so provides. K. S. A. 56-331 (a) (2). This has long been our law. *Koenig v. Adams*, 37 Kan. 52, 14 Pac. 439; *Blaker v. Sands*, 29 Kan. 551. The act of a partner in dissolving a partnership, being one of the rights of all partners in a partnership at will, creates no cause of action. We note, also, that

plaintiff does not contend that the partnership was wrongfully dissolved.

We next turn to the option to buy stock. The defendant contends that this option was barred by K. S. A. 84-2-202; the trial court found it barred by K. S. A. 84-1-206. Neither appears applicable. K. S. A. 84-2-202, as the Kansas comment published with the rule indicates, is a codification of the parol evidence rule, with certain modifications, as it is to apply to writings evidencing a contract of sale. Here we have no written contract between the parties, and the rule does not come into play.

K. S. A. 84-1-206 consists of two sections, the second of which provides that the first section "does not apply to contracts for the sale . . . of securities." Shares of bank stock being securities, K. S. A. 84-1-206 is by its terms inapplicable.

K. S. A. 84-8-319 is our present statute of frauds governing the sale of securities. It reads:

"A contract for the sale of securities is not enforceable by way of action or defense unless

"(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

None of the four conditions prescribed by K. S. A. 84-8-319 is present here. There is no writing signed by Lair, no delivery of the shares, no payment by Mildfelt, no written confirmation, and no admission of the option by Lair. Does this statute, then, bar plaintiff's claim? Under the facts and circumstances presented, we hold that it does.

We are dealing here with an option contract, an offer to sell a maximum number of shares at a fixed price per share, *in connection with a contract of employment.* While we are aware that some courts have held this section of the U. C. C. inapplicable to stock options granted to employees, we think the better rule is that set

forth in *Bingham v. Wells, Rich, Greene, Inc.*, 311 N. Y. S. 2d 508, 34 A. D. 2d 924 (1970), where the court held that a

". . . portion of the employment contract . . . involving a transfer of title to shares of stock for a price is a sale of securities within the purview of the Uniform Commercial Code § 8-319 and is not enforceable unless 'there is some writing signed by the party against whom enforcement is sought . . .'" (pp. 508, 509.)

And see, also, *Scarpinato v. National Patent Development Corp.*, 75 Misc. 2d 94, 347 N. Y. S. 2d 623, 625 (Sup. Ct. 1973). The other conditions fixed by the statute, *i. e.*, delivery, payment, confirmation without objection, or admission, would also make enforceable such a contract.

An option is an offer to sell, made for a valuable consideration. (See *Berryman v. Kmoch,* 221 Kan. 304, 559 P. 2d 790.) The consideration here was the service performed by Mildfelt in managing the bank. Where no time limit is fixed, a stock option continues in force for a reasonable time. 18 Am. Jur. 2d, Corporations, § 302. But we hold that, absent unusual circumstances or enforceable contract provisions to the contrary, an option to purchase stock granted by an employer to an employee terminates upon the cessation of the employer-employee relationship, in the same manner that an option to purchase real estate, included within the terms of a lease, is extinguished when the lease is terminated. *Estfan v. Hawks,* 166 Kan. 712, 204 P. 2d 780. Mildfelt's option thus came to an end on May 21, 1973.

One seeking to exercise an option must do so within the term; failure to exercise an option results in a waiver thereof. *Thompson v. Anderson,* 209 Kan. 547, 498 P. 2d 1. Had Mildfelt attempted to exercise his option during his employment by paying the agreed price to Lair, or by attempting to do so (see *Gardner v. Spurlock,* 184 Kan. 765, 339 P. 2d 65), or, if the exact amount to be paid was uncertain, then by giving timely notice of his intent to exercise the option and by making payment as soon as the amount was ascertained (see *Loose v. Brubacher,* 219 Kan. 727, 549 P. 2d 991), the bar of K. S. A. 84-8-319 would not have intervened. An attempt to exercise, either by payment or tender, is ordinarily a condition precedent to the bringing of an action on a stock option.

Mildfelt made no attempt to exercise his option. He tendered no payment and he sought no performance. He is not here seeking specific performance of the option agreement. Lair *has never refused performance*—and thus there is no factual basis for Mildfelt's claim of breach of the stock option.

Although reliance was placed upon the wrong section of the statute, the trial court's conclusion that the contract was unenforceable is correct.

We next turn to the question of whether plaintiff's alternative claim of fraud and deceit is also barred. We hold that it is. In order to prevail, plaintiff would be required to prove that Lair, secretly intending not to perform, entered into the precise oral agreement with Mildfelt which we hold is barred by the statute of frauds.

No Kansas case precisely in point has been called to our attention, nor has our research disclosed that we have passed upon this point. It is elementary, of course, that a contract unenforecable under the statute of frauds affords no basis for an action to recover damages occasioned by its breach. *Evans v. Lynch*, 200 Kan. 331, 436 P. 2d 867. The rule extending the bar to tort and other claims premised upon unenforceable contracts is expressed in these terms in 37 C. J. S., Frauds, Statute of, § 224, pp. 724, 725:

"An oral contract, within the statute, cannot be made the basis of an action for damages for its breach; nor, ordinarily, can any other action be maintained which requires proof of such contract to sustain the cause of action.

". . . [T]he statute of frauds operates as a bar to all actions brought on oral contracts falling within its terms . . .

". . . [T]he operation of the statute is not confined to cases where an action is brought directly on the contract. Whatever the form of the action may be, if the proof of a promise or contract within the statute is essential to maintain it, there can be no recovery unless the statute is satisfied . . . Even an action sounding in tort may be barred by the statute where an essential element of the cause of action is an oral contract within the statute . . ."

American Jurisprudence, Second, recognizes a split of authority. 37 Am. Jur. 2d, Fraud and Deceit § 70. An examination of the cases, however, convinces us that the rule as stated in C. J. S. is correct. In *Cohen v. Pullman Company*, 243 F. 2d 725 (5th Cir. 1957), the question presented was whether the appellant could maintain an action for fraud and deceit to recover damages sustained as a result of his reliance upon defendant's oral agreement to sell real property, upon proof that the defendant had no intention to perform at the time the agreement was made. After discussing the history of the statute of frauds, and the authorities on both sides, the court said:

"A careful consideration of the principles which lie back of and give force and meaning to the Statutes of Frauds of the several states, in the light of the authorities cited by both sides and discovered by us, leads us to the firm conclusion: that plaintiff's pleading and admission in this case brings it well

within the mischief which the Georgia Statute of Frauds was designed to meet; and that if we were to hold, as appellant asks us to do, that an action for damages could be based on the mere allegation that an oral promise to sell land was made without an intention to perform it, we would thereby thwart its basic purpose of preventing the subjection of real property to the jeopardy and hazard of oral agreements and would defeat and bring to naught the remedy for the very mischief the statute was enacted to provide against . . .

". . . [N]o sound reason . . . can, we think, be put forward for holding that a naked claim, as here, upon an oral promise to sell real estate, can be saved from the prohibitions of the statute by the simple device of merely alleging that the promise was made without the intention to perform it. The whole purpose of the statute is to prevent persons from being enmeshed in and harassed by claimed oral promises made in the course of negotiations not ending in contracts reduced to writing as required by these statutes." (pp. 728, 729.)

The Court of Civil Appeals of Texas, in *Collins v. McCombs,* 511 S.W. 2d 745 (Tex. Civ. App. 1974), said:

". . . Where plaintiff, although casting his complaint in the form of a cause of action for fraud, is attempting to recover damages for the breach of the promise, it is clear that he is, in effect, attempting to enforce the oral agreement. Where, as here, plaintiff is seeking to recover what he would have gained had the promise been performed, [it] is evident that the gist of his cause of action is the breach of the unenforceable promise. . . . Since plaintiff is here seeking to recover what he would have gained had the promise been performed, it is apparent that his action, while cast in language sounding in tort, is an indirect attempt to recover for the breach of the unenforceable promise and is, therefore, barred by the statute of frauds. . . ." (p. 747.)

In *Canell v. Arcola Housing Corp.,* 65 So. 2d 849 (Fla. 1953), the amended complaint alleged that plaintiffs purchased some land from defendants upon the oral representation that an easement for bathing beach facilities would be provided. The court said:

". . . The plaintiffs are relying upon a mere oral promise to create the easement, which is clearly within the terms of the statute of frauds and thus cannot be enforced directly or indirectly. . . .

"'. . . [A]n action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it.' . . . [W]e think that on the facts of the case under consideration the rule quoted above is best calculated to uphold the theory upon which the statute of frauds is founded, in accord with the principle that so long as the statute can be made to effectuate its purposes, courts should be reluctant to take cases from its protection. . . ." (p. 851.)

This case was followed recently by *Ostman v. Lawn,* 305 So. 2d 871 (Fla. Dist. Ct. App. 1974). There the court said:

"The statute of frauds, then, bars any claim which requires as its gravamen, proof of a promise or agreement, orally made, when such promise or agreement

is not to be performed within the space of one year from the making thereof. There is no distinction between an action ex contractu and an action ex delicto in this regard. . . .

. . . . . . . . . . . . . . .

"The Florida rule is that the statute of frauds may not be avoided by a suit for fraud based on oral representations . . ." (pp. 872, 873.)

Accordingly, we hold that the district court did not err in sustaining defendant's motion for summary judgment on plaintiff's claim for damages on the theory of fraud and deceit. Breach of contract being the gravamen of that claim, it was barred by the statute of frauds.

We turn next to the plaintiff's claim that the trial court erred in ruling that the attorneys for the defendant were not barred from participation in the case because of conflict of interest, and because Mr. Fleming would be called as a witness. Plaintiff bases the conflict of interest claim upon the preparation of the contract by Fleming. He contends that Fleming represented him at that time. He further contends that Fleming would be called as a witness in the case.

We are mindful of the rule that attorneys must not represent conflicting interests, or undertake to discharge duties which are inconsistent. *State v. Sullivan & Smith,* 210 Kan. 842, 504 P. 2d 190. Further, an attorney appearing against a party he has previously represented can not, in forwarding the interests of his new client, use against his former client any knowledge or information acquired through his former connection, which information was of a confidential or secret nature, or was so regarded by the client. *City of Wichita v. Chapman,* 214 Kan. 575, 521 P. 2d 589.

In the instant case, the record is clear that Mr. Fleming acted only as a scrivener; he did not obtain any confidential information from Mildfelt, he gave Mildfelt no advice, and there was no confidential relationship between them.

We are also aware of the rule that an attorney should not accept employment in contemplated or pending litigation if he is to be called as a witness, but this rule is subject to exception if the testimony will relate solely to uncontested matters, or solely to matters of formality. DR 5-101, Code of Professional Responsibility (214 Kan. lxxxv). It appears that any testimony of Mr. Fleming would be concerned only with the preparation of the contract, and with his service as a member of the board of directors of the Home State Bank. It does not appear that any areas of this testimony are controverted. It is admitted that Fleming redrafted the con-

tract after the original had been prepared by Mildfelt, and that Fleming served on the Board of Directors when Mildfelt was employed, and also when he was discharged.

These matters were all gone into thoroughly at an extensive evidentiary hearing, and they were carefully considered by the trial court prior to its ruling denying the motion. This is an area in which the trial court has exercised its sound discretion. Upon review of this record, we find no evidence indicating an abuse of that discretion.

Finally, plaintiff claims that it was error for the trial court to hold the plaintiff accountable for partnership losses occurring after the termination of the partnership. K. S. A. 56-336 provides in applicable part that the dissolution of a partnership does not of itself discharge the existing liability of any partner. K. S. A. 56-330 provides that on dissolution, the partnership is not terminated, but continues until the winding-up of the partnership affairs is completed. K. S. A. 56-315 provides that all partners are liable jointly and severally for everything chargeable to the partnership.

Both partners were liable for existing partnership obligations at the time of dissolution, and this liability continued thereafter until the partnership affairs were wound up. The partnership accounting, requested by both parties, was tried at length. Lair presented a bank employee, who substantiated the account Lair relied upon. Mildfelt presented no evidence to contradict this evidence, and stated during his testimony that he had not reviewed the defendant's accounting, a copy of which was provided to plaintiff's counsel some sixty days prior to trial. Mildfelt's principal claim of error in the accounting relates to unearned premiums which the partnership was required to refund when loans made and insured prior to May 21 were renewed thereafter. The trial court held that plaintiff was obligated to participate in such refunds. To hold otherwise would in effect permit plaintiff to participate in premiums generated by insurance written by Lair after the dissolution of the partnership. Under the circumstances, we conclude that the findings of the trial court are correct. They are supported by substantial evidence and should not be disturbed. As we said in *Coonrod & Walz Constr. Co., Inc. v. Motel Enterprises, Inc., et al.,* 217 Kan. 63, 75, 535 P. 2d 971,

". . . 'It is not the function of appellate courts to make an independent accounting of formidable accounts in order to determine the precise correctness of particular findings.' (*Smith v. Derby Oil Co.,* 147 Kan. 300, 76 P. 2d 846, Syl. ¶ 1. . . .) This court will disturb the trial court's findings of fact

on such an account only where 'manifest or demonstrable error appears.' . . ."

By way of cross-appeal, Lair challenges an order of the trial court finding excusable neglect, and permitting Mildfelt to file his designation of record on appeal and statement of points out of time. In view of the disposition to be made of this case, the point is moot.

The judgment of the trial court is affirmed.