MITCH HALL *vs*. HORIZON HOUSE MICROWAVE, INC.
& others.[1]

Norfolk.   December 9, 1986. — April 17, 1987.

Present: DREBEN, QUIRICO, & KASS, JJ.

*Practice, Civil*, Amendment, Complaint, Answer, Judgment notwithstanding verdict. *Frauds, Statute of. Contract*, Option, Sale of securities, Employment. *Option. Uniform Commercial Code*, Sale of securities, Statute of Frauds. *Estoppel.*

In ruling on postjudgment motions to amend the pleadings in a civil action to conform to the evidence, the trial judge acted within her discretion in denying the plaintiff's motion to amend the complaint to conform to a new theory of the case, under circumstances where four years had elapsed since the complaint was filed, discovery had been conducted, and a motion for summary judgment argued, and where the defendants did not consent to proceed on the plaintiff's new basic factual premises. [86-88]

In ruling on postjudgment motions to amend the pleadings in a civil action to conform to the evidence, the trial judge correctly allowed the defendants' motion to amend their answer to raise the defense of the Statute of Frauds to reflect the basis on which the case was actually tried, under circumstances where the complaint gave no occasion to plead the Statute of Frauds and where at trial the defendants invoked the defense once the plaintiff's reliance on an oral agreement became clear. [88-89]

Where a stock option agreement made in the context of an employer-employee relationship provided that shares of stock will be transferred for a price, the agreement was a "contract for the sale of securities" within the meaning of the Statute of Frauds provisions pertaining to such contracts as set forth in Uniform Commercial Code — Investment Securities, G. L. c. 106, § 8-319. [90-92]

At the trial of a civil action, the judge correctly allowed the defendants' motion for judgment notwithstanding the verdict, inasmuch as a jury could not rationally have concluded that the plaintiff had an enforceable stock option agreement where the Statute of Frauds for the sale of securities under the Uniform Commercial Code, G. L. c. 106, § 8-319, barred the plaintiff's asserted oral option; where there was no evidence

[1] Horizon House International and William Bazzy.

that the plaintiff had paid for stock with his services, or was otherwise entitled to any exception to the Statute of Frauds under G. L. c. 106, § 8-319 (*b*); where any writing the plaintiff asserted to be enforceable was only a preliminary proposal and, in any event, did not embody the agreement he sought to enforce; and where the plaintiff made no showing that, by reasonably relying on the supposed agreement and having thereby suffered a detriment, he was entitled to recovery under the principle of promissory estoppel. [92-94]

CIVIL ACTION commenced in the Superior Court Department on April 18, 1980.

The case was tried before *Edith W. Fine*, J.

*Nicholas A. Abraham* for the plaintiff.

*William Baker* for the defendants.

KASS, J. There lies at the core of the case the question whether a stock option which is part of an employment agreement is exempt from a Statute of Frauds, i.e., the requirement of G. L. c. 106, § 8-319, as inserted by St. 1957, c. 765, § 1, that "[a] contract for the sale of securities is not enforceable . . . unless: (*a*) there is some writing signed by the party against whom enforcement is sought . . . ."[2] Before reaching the core it is necessary to consider decisions made by the Superior Court judge about motions to amend the pleadings. Finally we shall consider relatively subsidiary matters arising out of the plaintiff's employment by the corporate defendants.[3]

From 1967 to September, 1979,[4] Mitch Hall[5] worked for Horizon House Microwave, Inc. ( "Microwave" ), a publishing

---

[2] Article 8 of the Uniform Commercial Code, which bears the short title, "Uniform Commercial Code — Investment Securities" (see G. L. c. 106, § 8-101), was revised and restated in its entirety by St. 1983, c. 522, § 5. the revisions to § 8-319 did not affect paragraph (*a*) of that section. Revisions to paragraphs (*b*), (*c*), & (*d*), which prescribe other methods of satisfying the investment securities Statute of Frauds, have no bearing in the instant case.

[3] By agreement of counsel, the action was dismissed against two affiliated corporations, Horizon House Telecommunications, Inc., and Horizon House Microsol, Inc.

[4] Hall's letter of resignation carries the date August 22, 1979, but he seems to have stayed on a few weeks to help break in his successor.

[5] The plaintiff so styles himself in his complaint. Other papers bear the name Mitchell Hallal.

enterprise, and its subsidiary, Horizon House International ("HHI"), which promoted and operated trade exhibitions. Hall enjoyed success at Microwave and HHI and, toward the end of his tenure, possessed substantial executive responsibility at HHI. Hall's complaint says that William Bazzy, the president of Microwave and of HHI, had in March, 1978, promised him that he would receive an option to buy, over four years, ten percent (1,000 shares) of the outstanding capital stock of HHI, at $20 per share.

In response to special questions, the jury found that the defendants had made an enforceable promise to Hall to give him an option to acquire ten percent of the stock of Microwave.[6] Before the case had gone to the jury, the defendants had timely moved for a directed verdict. Mass.R.Civ.P. 50 (a), 365 Mass. 814 (1974). After entry of judgment, the defendants moved for judgment notwithstanding the verdict (Mass.R.Civ.P. 50 [b], 365 Mass. 814 [1974]), and that motion was allowed in part, viz., as to the stock option and special questions no. 4 and no. 5, which dealt with other compensation issues.

I. *Postjudgment Amendment of Pleadings.*

During the course of trial the theory of the plaintiff's case and, consequently, the nature of the defense, underwent profound metamorphosis, resulting in motions after judgment by the defendants to amend the answer and by the plaintiff to amend the complaint, in each case to conform to the evidence (although so styled, the object of the motion was to have the pleadings conform to a new theory of the case) at trial. See Mass.R.Civ.P. 15 (b), 365 Mass. 761 (1974). The trial judge allowed the defendants' motion to amend the answer and denied the plaintiff's motion to amend the complaint.

A. *Denial of the motion to amend the complaint.* Paragraph 4 of the complaint alleged "an option . . . to purchase . . . shares . . . of Horizon House International . . . ." The complaint went on to say that the plaintiff "was led to believe that said option applied to all defendants' operations," but, nonethe-

---

[6] Five other questions answered by the jury concerned claimed commissions and expense reimbursement. We shall touch on these later in this opinion.

less, the option asserted was to buy HHI stock. Indeed, as late as two weeks before trial, in opposing a defense motion for summary judgment, Hall by affidavit reiterated reliance on a promise, adverted to in a memorandum dated March 17, 1978,[7] from Bazzy to Hall describing a proposed stock purchase plan "to be made available to key employees of Horizon House International." The capital structure described in that memorandum is that of HHI.

In 1981, i.e., three years before trial, HHI had made an assignment of its assets for the benefit of creditors. Shares of stock in HHI were no longer an asset worth pursuing, an unpleasant reality with which the plaintiff did not come to grips — at least in any overt manner — until trial commenced. During the first day of trial plaintiff's counsel changed ground and offered evidence of conversations between Hall and Bazzy in 1976 about a stock option for Hall in Microwave. Defense counsel objected. The judge ruled that she would receive the evidence as background but that, a change to a different time period and different promise not having been foreshadowed by pretrial discovery, it was too late in the case to make a major shift in the theory of the case. To the extent relevant as background, conversations prior to the March 17, 1978, memorandum bore on whether Hall was and had reason to be confused about whether the memorandum referred to shares of HHI or Microwave. The possibility of such confusion had been raised, albeit very vaguely, in paragraphs three and four of the complaint.

The amendment to the complaint sought to substitute a stock option in Microwave for the one in the now worthless HHI and to place the date of the promise relied upon in March, 1976, rather than in March, 1978. As noted above, the basis of the motion was to have the pleadings conform to the evidence. Such a motion assumes the altered aspects of a case are tried by consent of the parties, a consent which may be implied from acquiescence, i.e., the absence of objection.

[7] The memorandum bears a typed date of March 10, 1978, but a handwritten date of March 17th.

*National Medical Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 578-579 (1984). *Jakobsen* v. *Massachusetts Port Authy.*, 520 F.2d 810, 813-815 (1st Cir. 1975). Smith & Zobel, Massachusetts Rules Practice § 15.7 (1974). Here the defendants' objection to evidence which deviated from the complaint was lusty and extended. In such circumstances, notwithstanding a primary bias under Mass.R.Civ.P. 15 in favor of amendment, a judge may weigh the prejudice against the opposing party and the public interest of allowing a late motion to amend a complaint. *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-292 (1977). *Bullock* v. *Zeiders*, 12 Mass. App. Ct. 634, 637-638 (1981). *Ramos* v. *Selectmen of Nantucket*, 16 Mass. App. Ct. 308, 320-321 (1983). Compare *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. 547, 549-554 (1987), in which the proposed amendment did not alter the nature of the proof and in which the defendant, because of a four-month continuance, had time to adjust. We think the judge acted within her discretion in denying the motion in view of the focus of the complaint on the March 17, 1978, memorandum, the mention in that memorandum of HHI, rather than Microwave, and the circumstances that four years had elapsed since the filing of the complaint, discovery had been conducted, and a motion for summary judgment argued, all without a sign that a basic factual premise in the case would shift, and the judge's ruling that the case was not to be tried on the basis of an agreement made before 1978.

B. *Allowance of the motion to amend the answer.* In their answer, the defendants did not plead the Statute of Frauds as a defense. Indeed, a Statute of Frauds defense had little promise in light of the excerpt from the March 17, 1978, memorandum attached to the complaint. The plaintiff appeared to be relying on a writing. Ordinarily a Statute of Frauds may not be relied upon unless pleaded, but that rule does not apply if the complaint discloses no occasion to plead it. *Frank* v. *Visockas*, 356 Mass. 227, 229 (1969). So here. Moreover, if on the basis of the manner in which the trial of the case unfolds it is manifest that a defense which must be pleaded, such as a Statute of Frauds (see Mass.R.Civ.P. 8[c], 365 Mass. 750 [1974]), is

relied upon, the trial judge may entertain a motion to amend the answer to reflect the basis upon which the case was tried. *Owens* v. *Dinkins*, 345 Mass. 106, 108 (1962). Compare *Rozene* v. *Sverid*, 4 Mass. App. Ct. 461, 465 (1976) (statute regarded as waived because neither pleaded nor relied upon).

On the first day of trial, as plaintiff's counsel moved from documentary to parol evidence to support a stock option in Microwave rather than HHI, defense counsel objected. By the third day of the seven-day trial, as the plaintiff's deemphasis of the 1978 written memorandum and reliance on an earlier oral agreement became manifest, the defense began in earnest to stand behind the Statute of Frauds. The effort of the defense to hold the plaintiff to the written memorandum and to fight off consideration of an earlier promise or an oral promise relating to Microwave was express. Defense counsel was conscious of the Statute of Frauds issue and argued mid-trial that, on the facts, his client came within one of the exceptions in § 8-319. We are satisfied that the defendants invoked the Statute of Frauds which relates to the sale of securities. The case was tried on that footing, and the trial judge correctly allowed the defendants' motion to amend the answer to conform to the evidence. In light of the judge's denial of the motion to amend the complaint, it is possible to inquire why it was necessary to amend the answer. It was necessary because evidence had been received about whether the stock option referred to HHI or Microwave. The trial of the case had also become so interlarded with evidence concerning pre-1978 conversations that, however limited the purpose of that evidence, an amendment of the answer to invoke the Statute of Frauds served to underscore on the record the central theory of the defense.

II. *Judgment Notwithstanding the Verdict.*

To test whether allowance of a motion for judgment notwithstanding the verdict was correct (Mass.R.Civ.P. 50(b), 365 Mass. 814 [1974]) we inquire whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury could reasonably return a verdict in favor of the plaintiff, i.e., whether from the evidence it was possible to draw enough reasonable inferences to make

out the elements of the plaintiff's case. *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 786 (1982). *Rubel* v. *Hayden, Harding & Buchanan, Inc.*, 15 Mass. App. Ct. 252, 254 (1983).

A. *The stock option.* If an oral stock option was barred by the sale of securities Statute of Frauds appearing in G. L. c. 106, § 8-319, and if the 1978 memorandum could only be read as applying to HHI, then a jury could not rationally find that Hall had an enforceable option to buy stock in Microwave.

1. *Applicability of § 8-319 to an employee stock option.* It has been settled that an option to buy stock comes within the meaning of the phrase "contract for the sale of securities" which appears in § 8-319. See *Colt* v. *Fradkin*, 361 Mass. 447, 452 (1972); *Quinn* v. *Beverages of W. Va., Inc.*, 159 W. Va. 571, 577 (1976). An option to acquire shares of stock at a certain price and within a certain time, after all, commits the optionor to sell those shares.

Hall argues that, when a stock option is part of an employment contract, it circumvents the bar of § 8-319. Under the statute, a contract for the sale of securities may be enforced if: (a) there is some *writing* signed by the party to be bound; (b) there has been *delivery* of the security or transfer instruction or *payment* has been made; (c) *written confirmation* of the transaction has been received by the party to be bound; or (d) the party to be bound *admits* that a contract was made.[8] The

---

[8] The text of the sale of securities Statute of Frauds G. L. c. 106, § 8-319, as appearing in St. 1983, c. 522, § 5 (see note 2 *supra*) is as follows:

"*Section 8-319. Statute of Frauds.*

"A contract for the sale of securities is not enforceable by way of action or defense unless:

"(*a*) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker, sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;

"(*b*) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to send written objection to the issuer within ten days after receipt of the initial transaction statement confirming the registration, or payment has been made, but the contract is enforceable under this provision only to the extent of the delivery, registration, or payment;

plaintiff makes alternative arguments. First, he argues that § 8-319 does not apply at all because stock options in employment contracts are not "sales" of securities. Second, he argues that if an employee stock option is to be treated as a sale, he has "paid" with his services and satisfies the condition for enforcement of an unwritten promise which appears in § 8-319 (b).

For the first proposition the plaintiff cites *Baldassarre v. Rare Metals Derivatives, Inc.*, 444 Pa. 100, 103 (1971) and *McDermott v. Russell*, 523 F. Supp. 347, 350 (E.D. Pa. 1981), which relied on the *Baldassarre* decision. In *Baldassarre* the court pitched its decision on the premise that stock options bound up with employment contracts were not "sales" of securities and, therefore, § 8-319 was not in the picture at all. Analytically that approach does not square with the definition in the Uniform Commercial Code of a "sale" as the passing of title from a seller to a buyer for a price, G. L. c. 106, § 2-106, and that a price may be payable in money or otherwise. G. L. c. 106, § 2-304. See *Colt v. Fradkin*, 361 Mass. at 452.

We are unwilling to adopt a broad principle that a stock option need not be in writing simply because it is connected to employment. No such exception appears in the statutory text and, indeed, the employment relationship is as fertile as any in producing misunderstandings, inchoate arrangements, faulty memory, and high emotions, the very human failings which Statutes of Frauds are traditionally designed to reduce (however unsuccessfully) in litigation. See 7 Wigmore, Evidence § 2093 (Chadbourn rev. 1978). Moreover, employee stock options are frequently forward-looking, i.e., designed to retain the loyalty of an employee, rather than consideration for past service. 5 Fletcher, Cyclopedia of the Law of Private Corporations § 2143.1 (rev. perm. ed. 1976).

"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

"(d) the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for the sale of a stated quantity of described securities at a defined or stated price."

When the agreement asserts that shares of stock will be transferred for a price, i.e., sold, we are of opinion that such an agreement is one for the sale of securities and subject to § 8-319, even though the setting in which the agreement is made is an employer-employee relationship. Cases which express this view include: *Burns* v. *Gould*, 172 Conn. 210, 219-220 (1977); *Mildfelt* v. *Lair*, 221 Kan. 557, 564-565 (1977); *Bingham* v. *Wells, Rich, Greene, Inc.*, 34 A.D.2d 924 (N.Y. 1970); *Scarpinato* v. *National Patent Dev. Corp.*, 75 Misc. 2d 94, 96-97 (N.Y. Sup. Ct. 1973); *Bowers Steel, Inc.* v. *DeBrooke*, 557 S.W.2d 369, 374 (Tex. Civ. App. 1977) (distinguishes cases involving options to purchase stock in future from cases where payment has been made and paragraph (*b*) of § 8-319 may be invoked); *Quinn* v. *Beverages· of W. Va., Inc.*, 159 W.Va. at 576-578.

2. *Whether § 8-319 is satisfied.* Once it is established that § 8-319, the securities Statute of Frauds, is applicable, the next inquiry is whether Hall "paid" with his services and whether he can for that or any other reason maintain an action within the statute's strictures.

a. *Application of the "payment" exception in § 8-319 (b).* Services can constitute a payment which permits enforcement of an oral promise to transfer stock. *Burns* v. *Gould*, 172 Conn. at 218. *Fisher* v. *First Stamford Bank & Trust Co.*, 751 F.2d 519, 523 (2d Cir. 1984). Hall did not enter upon employment in exchange for stock. He had been in the employ of Microwave for nine years before the alleged promise of a right, at his option, to pay $20 per share for 1,000 shares was made. To the extent that Hall's services paid for anything in connection with stock, they paid for the option, not the stock, for which there was a price established in dollars. The "payment" referred to in § 8-319 (*b*) is payment "of the price of the stock . . . rather than his payment in services of the price for the option." *Colt* v. *Fradkin*, 361 Mass. at 453. Hall, while employed by the defendant corporations, never attempted to exercise the option he now asserts. Cf. *Pitts* v. *Halifax Country Club, Inc.*, 19 Mass. App. Ct. 525, 536, n.12 (1985). See also *Mildfelt* v. *Lair*, 221 Kan. at 565, for the principle that

an option to purchase stock granted by an employer to an employee generally ends along with the employer-employee relationship.

b. *Adequacy of the March, 1978, writing.* The March 17, 1978, memorandum affords Hall no comfort. First, it is a preliminary proposal and contemplates significant details to be worked out. Hall, by his own account at trial, rejected the over-all compensation package contained in the document and later documents (none of them signed) were circulated for consideration. However charitably read in favor of Hall, the March 17, 1978, document represents imperfect and inchoate negotiations by which the parties could not be bound. *Blair* v. *Cifrino*, 355 Mass. 706, 709-710 (1969). *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 630 (1979). Second, the only stock option which the March, 1978, memorandum describes is in HHI, yet the promise of an option which Hall seeks to enforce relates to Microwave. To satisfy the Statute of Frauds, the writing relied on must reflect the promise which the plaintiff seeks to enforce. *Dutton* v. *Bennett*, 256 Mass. 397, 403 (1926). *Ryan* v. *Gilbert*, 320 Mass. 682, 683-684 (1947). *A.B.C. Auto Parts, Inc.* v. *Moran*, 359 Mass. 327, 330 (1971).

c. *Promissory estoppel.* In a variation on the payment exception in § 8-319, Hall argues entitlement to an option to buy Microwave stock on the basis of promissory estoppel. See *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 727-728 (1974), *S.C.*, 368 Mass. 811 (1975); *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 6 Mass. App. Ct. 152, 159-160, *S.C.*, 376 Mass. 757, 760-761 (1978); Restatement (Second) of Contracts § 90 (1981). The point Hall urges is that he stayed longer in the employ of the Horizon House companies (when he left, Hall started his own business) than he otherwise would have by reason of Bazzy's blandishment of a stock option. It is not a persuasive contention.

An element of promissory estoppel is that the party invoking it must have reasonably relied on the alleged promise to his detriment. Given the extended and persistently inconclusive nature of his negotiations with Bazzy about an over-all employ-

ment and compensation package, Hall could not have had more than a well founded hope that the stock option aspect of the deal would work out satisfactorily for him. Inchoate negotiations are no better basis for reliance than for an action on the purported contract as such. See *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. at 630. Moreover, there is no evidence of detriment. During the period of negotiations, Hall received significant pay increases (from $27,500 in 1976 to $51,000 in 1979, leaving aside non-cash benefits). There is no evidence of how Hall fared as an independent entrepreneur and, therefore, whether he suffered any economic loss by postponing his own venture.

In sum we conclude that the trial judge correctly granted judgment notwithstanding the verdict as to the stock option aspect of the case. It has not been necessary to consider whether, under G. L. c. 156B, § 21, Bazzy could have made a binding promise of a stock option. We intimate no view on the point.

B. *One and one-half percent commission on magazine advertising sales.* Special Question # 4 to the jury was: "Did the defendants make an enforceable promise to pay plaintiff 1 ½% of the increase in sales of Telecommunications Journal for the first quarter of fiscal 1980 (July, August and September, 1979) over the sales for the same period for fiscal year 1979." The jury answered "yes" and awarded damages of $2,687 to Hall on this count. Although diffuse and confusing, the record on this point contains testimony by Hall that his deal with Bazzy was to receive a one and one-half percent commission on increases in fiscal 1980 first quarter sales (presumably annualized) over fiscal 1979 sales. There was also evidence of a pattern of commission payments over several years on a basis of one and one-half percent of increases over the previous fiscal year. In the light of potent contrary evidence (e.g., that in 1980 Hall was no longer working on Telecommunications Journal business), Hall's evidence was — to put it gently — not overpowering. When acting on a motion for judgment notwithstanding the verdict, however, a judge should ask, as we have said above, whether it is possible for the finder of fact

to draw enough reasonable inferences to make out the elements of the plaintiff's case. On that generous test, we think Hall makes it over the rail on the commission point.

C. *Other issues*. On a cross appeal, the defendants challenge, as not founded in any evidence, jury verdicts of $36,000 for commissions arising out of sale of booth space for a 1980 trade show and an $842 item of air fare reimbursement. Here again, although the evidence is conflicting, the jury could rationally resolve the disputed question in Hall's favor.

The aspect of the judgment denying recovery on the magazine advertising sales commission is reversed, and judgment is to enter for the plaintiff on that score in the amount of $2,687, plus interest. In all other respects, the judgment is affirmed.

*So ordered.*